UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHRISTOPHER ROUSE,

                          Plaintiff,

              -against-                                          13-CV-01443 (SN)

ELLIOT STEVENS, LTD., and STEVEN                                OPINION & ORDER
SHALOM,

                          Defendants.

----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 6/24/2016 __
```

SARAH NETBURN, United States Magistrate Judge:

    The plaintiff Christopher Rouse commenced this action against the defendants Elliot

Stevens, Ltd. and Steven Shalom, alleging claims for breach of contract, unjust enrichment and

fraud. Both parties now move for judgment on the pleadings on each of the plaintiff's claims.

    For the reasons set forth below, the plaintiff's motion is DENIED in its entirety, and the

defendant's motion is GRANTED in part on the breach of contract and unjust enrichment claims.

## BACKGROUND

**I.     Factual Background**

    The following facts are taken from the parties' pleadings, as well as from documents that

were incorporated by reference into the plaintiff's complaint and included as exhibits with the

parties' Joint Proposed Pre-Trial Order ("JPTO").

    Defendant Elliot Stevens owns and operates a store in the lobby of the Waldorf Astoria

Hotel (the "Waldorf Astoria") in New York, New York. (Compl. ¶ 7.) In July 2007, the plaintiff

Christopher Rouse, a United Kingdom resident, vacationed in New York and spent

approximately a week as a guest at the Waldorf Astoria. (Compl. ¶¶ 2, 6.) On July 15, 2007, the

plaintiff purchased ten separate statues (the "Statues") for a purchase price of $105,000 from

defendant Elliot Stevens, Ltd. ("Elliot Stevens"). (JPTO Ex. 5.) The phrases "Specialists in

European and Oriental Art" and "Licensed Appraisers" were printed at the top of the bill of sale,

and the phrase "ALL SALES ARE FINAL" was printed at the bottom. (Id.)

On August 1, 2007, Steven Shalom, an employee of Elliot Stevens, appraised each of the

Statues. (JPTO Ex. 6.) In the appraisal document, Mr. Shalom represented that he was a member

of the "Mid-Am/The Antique Appraisers Association and a qualified appraiser of the articles

listed below." (Id.) In his appraisals, Mr. Shalom stated that the Statues were "genuine." (Id.) His

valuations of each of the Statues ranged from $4,500 to $18,500. (Id.)

On August 8, 2014, the plaintiff arranged for the shipment of the Statues to his home in

the United Kingdom. He paid £3615.24 to cover the cost of shipping. (JPTO Ex. 7.)

According to the plaintiff, when he first viewed the Statues at Elliot Steven's store, he

was told by an Elliot Steven's employee that they were "genuine works" by artists Demeter H.

Chiparus, Paul Philippe and Michael Godard. (Compl. ¶ 11.) The plaintiff was also told that

Chiparus had been a long-time resident of the Waldorf Astoria and that upon his death, Elliot

Stevens had acquired a number of his original artworks. (Compl. ¶ 12.) The plaintiff allegedly

was offered the Statues at a "significant discount," due to the impending retirement of the store's

owners. (Compl. ¶ 13.) According to the plaintiff, the owners did not retire, nor were they

planning to retire soon at the time that this statement was made.

The plaintiff alleged that he agreed to purchase the Statues for $105,000 in reliance on

Elliot Stevens's representation that the Statues were genuine and were being offered at a

significant discount. He contends that when the Statues arrived at his residence in the United

Kingdom, they did not appear to be the same as those he viewed at Elliot Stevens's store in New

York. An appraiser hired by the plaintiff valued the Statues at "less than $10,000" and concluded that they were "cheap copies with no artistic value." (Compl. ¶ 48.) The plaintiff sought to return the Statues to Elliot Stevens in exchange for a full refund, but the parties were unable to reach an agreement.

The plaintiff alleges that the Elliot Stevens employee "knew the Statues were worth far less than the invoice price at the time [the] representation was made." (Compl. ¶ 21.) He contends that at the time of the sale, Elliot Stevens also knew that the Statues were "unauthorized copies of the original works," and "worth no more than the value of the materials from which they were made." (Compl. ¶¶ 39, 40.)

The plaintiff further alleges that the Mid-Am Antique Appraisers Association, of which Mr. Shalom is a member, has been defunct since 1986. He contends that in August 2007, Mr. Shalom had no valid appraiser license from any existing appraisal organization.

## II.    Procedural Background

On March 4, 2013, the plaintiff filed a complaint against Elliot Stevens and Steven Shalom (the "defendants"), alleging fraud, breach of contract and unjust enrichment. The parties consented to magistrate judge jurisdiction on September 29, 2015. On February 25, 2016, the parties submitted their Joint Proposed Findings of Fact and Conclusions of Law in anticipation of trial. Upon Court order, the plaintiff filed a motion for judgment on the pleadings on May 5, 2016. The defendant filed a cross-motion and opposition on May 17, 2016, and the plaintiff filed an opposition and reply on May 23, 2016.

## DISCUSSION

### I.      Legal Standard for Motion for Judgment on the Pleadings

Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters Inc., 842 F.2d 639, 642 (2d Cir. 1988). When reviewing a party's 12(c) motion, the "Court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)) (internal quotations omitted).

In considering a Rule 12(c) motion for judgment on the pleadings, the court applies the same standards used for the determination of a Rule 12(b)(6) motion to dismiss. See LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475–76 (2d Cir. 2009). Accordingly, the court may consider any written documents that are attached to a complaint, incorporated by reference, or are "integral" to it. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). This includes documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers, 282 F.3d at 154 (quoting Int'l Audiotext Network Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)) (internal quotations and citations omitted).

II.      **Statute of Limitations**

The defendants argue that the plaintiff's breach of contract and unjust enrichment claims are both time barred and should be dismissed. A federal court sitting in diversity must apply the forum state's law to determine the applicable statute of limitations for each claim. See Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990). Likewise, "state law determines the related questions of what events serve to commence the action and toll the statute of limitations." Id. (quoting Personis v. Oiler, 889 F.2d 424, 246 (2d Cir. 1989)).

In moving for judgment on the pleadings based on a statute of limitations defense, the defendant bears the initial burden of demonstrating that the statute of limitations has expired. See Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013) (citing Romano v. Romano, 19 N.Y.2d 444, 447 (1967)). The burden then shifts to the plaintiff to present facts showing that his claim falls within an exception to the statute of limitations. See Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243 n.4 (citing Brush v. Olivo, 81 A.D.2d 852, 853 (2d Dep't 1981)).

A.      **Breach of Contract**

Both parties move for judgment on the pleadings on plaintiff's breach of contract claim. The plaintiff argues that the undisputed facts establish defendants' liability for breach of contract; whereas the defendants argue, among other things, that the breach of contract claim is time barred under the four-year statute of limitations that governs contracts for the sale of goods under the New York Uniform Commercial Code (N.Y. UCC). In this regard, the defendants contend that the plaintiff's claim accrued in 2007, when he received delivery of the Statues. The plaintiff rejects this accrual date, arguing that the claim did not accrue

until 2011, when the parties' negotiations over the possible return of the Statues broke

down. The complaint was not filed until March 4, 2013.

Claims arising under the UCC for breach of contract are subject to a four-year statute

of limitations. See N.Y. UCC § 2-725(1) ("An action for breach of any contract for sale

must be commenced within four years after the cause of action has accrued."); Port Auth.of

N.Y. and N.J. v. Allied Corp., 914 F. Supp. 960, 962 (S.D.N.Y. 1995). The cause of action

accrues at the time the breach occurs, "regardless of the aggrieved party's lack of knowledge

of the breach." N.Y. UCC § 2–725(2). "Any claim sounding in breach of contract arising out

of the contract of sale and/or breach of express or implied warranty accrue[s] on the date of

delivery." Jackson v. Eddy's LI RV Ctr., Inc., 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012).

Tender of delivery occurs when "the seller put[s] and hold[s] conforming goods at the

buyer's disposition." N.Y. UCC § 2–503(1). "[T]ender of delivery is not defeated nor the

four year limitation period of section 2-725 tolled by the buyer's refusal to accept the goods

offered by the seller." Uchitel v. F.R. Tripler & Co., 434 N.Y.S.2d 77, 79 (1st Dep't 1980).

In opposing defendants' motion, the plaintiff argues that his claim did not accrue

until 2011—four years after delivery—when the parties' settlement negotiations broke down

and the defendants definitively took the position that they would not accept the plaintiff's

return of the Statues in exchange for a refund. In this regard, the plaintiff seeks to analogize

the facts of this case to the accrual of a claim for anticipatory repudiation. He relies on QK

Healthcare Inc. v. InSource, Inc., 108 A.D.3d 56, 67 (2d Dep't 2013), which holds that, in a

claim for anticipatory repudiation, the aggrieved party "has the option to either deem the

defendants to have breached at the time of the repudiation, or wait for the defendants to

perform at the time fixed for performance." This common law approach is also reflected in N.Y. UCC § 2-610 ("Anticipatory Repudiation").

A claim for anticipatory repudiation is "separate and distinct from a cause of action sounding in breach of contract," QK Healthcare, 108 A.D.3d at 63, and requires that there be future obligations yet due that the repudiating party expressly refuses to perform. Norcon Power Partners L.P. v. Niagara Mohawk Power Corp., 92 N.Y.2d 458, 462–63 (1998) (anticipatory repudiation occurs "when a party repudiates contractual duties *prior to the time designated for performance* and before all of the consideration has been fulfilled") (emphasis supplied). In contrast, a breach of contract for sale of goods occurs when tender of delivery is made, marking the moment when the seller has fully performed under the contract. Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 410 (1985) (holding that a breach of contract for sale of goods "accrues when the breach occurs and, in the absence of a warranty explicitly extending to future performance, a breach occurs when tender of delivery is made.")

Here, both parties fully performed their duties under the contract: the plaintiff paid the defendant $105,000 as consideration for the Statues, and the defendant tendered delivery of the Statues to the plaintiff. The bill of sale made plain that the sale was final; no returns were permissible. As such, there was no future performance for the defendants to repudiate and, concomitantly, no basis for plaintiff to await future performance. See In re Beeche Sys. Corp. v. D.A. Elia Constr. Corp., 164 B.R. 12, 17 (N.D.N.Y. 1994) (rejecting the petitioner's anticipatory repudiation argument because the defendant had already performed under the contract.)

Furthermore, the plaintiff's rejection of non-conforming goods did not toll the four-year statute of limitations. See Long Island Lighting Co. v. Transam. Delaval Inc., 646 F. Supp. 1442, 1455 (S.D.N.Y. 1986) (noting that "even tender of *non* conforming goods is considered delivery" and holding that the four-year statute of limitations began to run on the date of delivery.) And any claim for equitable relief must be denied, as plaintiff waited approximately two years from when any "repudiation" occurred before filing this action.

The plaintiff's claim for breach of contract is therefore time barred, and judgment in favor of defendants on plaintiff's breach of contract claim is granted.

### B.    Unjust Enrichment

The plaintiff seeks judgement on the pleadings on his unjust enrichment claim based on the defendants' responses (or non-objections) to the Requests for Admissions. The defendants seek judgment on the pleadings on the ground that this equitable claim is precluded by the contract between the parties and is time barred.

Both parties mistakenly assert that either a three- or six-year statute of limitations would apply to plaintiff's unjust enrichment claim. But where an unjust enrichment and breach of contract claims are based upon the same facts and pled in the alternative, the same statute of limitation applies to both. See Maya NY, LLC v. Hagler, 106 A.D.3d 583, 585 (1st Dep't 2013).

The plaintiff's unjust enrichment claim is premised on the same facts as his breach of contract claim. He alleges that the defendant represented that the Statues were genuine, the plaintiff paid defendant $105,000 for the Statues, and the Statues were later appraised to be worth between $0 and $500 each. (See Compl. ¶¶ 11–29.) Furthermore, for both the breach of contract and unjust enrichment claims, the plaintiff seeks the recovery of the $105,000

purchase price of the Statues, as well as the £3615.24 paid in shipping fees. Therefore, his unjust enrichment claim is governed by the four-year statute of limitations found in UCC § 2-725(1) that applies to his breach of contract claim. See Wuhu Import & Export Corp. v. Capstone Capital, LLC, 39 A.D.3d 314, 315 (1st Dep't 2007) (in action by buyer of goods against the seller, applying four-year statute of limitations found in UCC § 2-725(1) to breach of contract and unjust enrichment claims); Herba v. Chichester, 301 A.D.2d 822, 823 (3d Dep't 2003) (same). Accordingly, the Court enters judgment in defendants' favor on the plaintiff's unjust enrichment claim. It is, therefore, unnecessary to address the merits of the defendants' second argument: that the plaintiff's unjust enrichment claim is barred as duplicative of the breach of contract claim.

## III.  Fraud Claims

Both parties move for judgment on the pleadings on plaintiff's fraud claims. The plaintiff argues that there are undisputed facts that establish that the defendants are liable for fraud. The defendants argue that the plaintiff's fraud claims are duplicative of the breach of contract claim and therefore are improper as separate and distinct causes of action. Separately, the defendants argue that the facts do not support a finding of fraud.

Under New York law, a claim for fraud is barred if it is merely duplicative of a plaintiff's breach of contract claim. See Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007) (citing River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp., 295 A.D.2d 274, 275 (1st Dep't 2002)). "While the misrepresentation of an intention to perform under the contract is insufficient to allege fraud, a misrepresentation of a material fact which is collateral to the contract and serves as an inducement for the contract is sufficient to allege an independent claim of fraud." Int'l Design Concepts, 486 F. Supp. 2d at 237; see also New York Practice Series –

New York Law of Torts § 1:27 (2015) ("Generally, when a plaintiff alleges both breach of contract and fraud, the cause of action in fraud may be maintained if the allegations of wrongdoing are distinct from those giving rise to the breach of contract and relate to facts extraneous from the contract.") To maintain a fraud claim alongside a breach of contract claim, the plaintiff must either "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp.2d 395, 409 (S.D.N.Y. 2009) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

Viewing all facts in the light most favorable to the non-moving party, the plaintiff has pleaded a fraudulent inducement claim that is separate and distinct from the plaintiff's breach of contract claim. Accordingly, defendants are not entitled to judgment on the grounds that the pleadings fail to allege a non-collateral fraud claim.

The plaintiff alleges that before the parties entered into a contract for the sale of the Statues, the defendants showed him ten statues, which were represented to be "genuine works" by the artists Demeter H. Chiparus, Paul Philippe, and Michael Godard. (Compl. ¶ 11.) The defendants' statements regarding the authenticity of the Statues induced the plaintiff to purchase them for $105,000, a price that the defendants allegedly told him was "well below market." (Compl. ¶ 19.) These representations were statements about present facts, rather than statements about the defendants' future intent to perform under the contract. The alleged statements therefore constituted "independent false representations . . . before there ever was a contract between the parties, which led [the plaintiff] to enter into it." Triangle Underwriters, Inc. v.

Honeywell, Inc., 604 F.2d 737, 747 (2d Cir. 1979). Accordingly, the plaintiff has pleaded a cause of action for fraud extraneous to the contract and the defendants' motion for judgment in their favor on the fraud claims is denied. At trial, however, the defendants may seek to introduce evidence to dispute the plaintiff's claim that the fraud claim is collateral to and separate from the breach of contract claim.

The plaintiff argues that he is entitled for judgment on the pleading on his fraud claims. In order to state a cause of action for fraud, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnenstock & Co., 443 F.3d 230, 234 (2d. Cir. 2006); see Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).

The plaintiff contends that the defendants represented that the Statues were "genuine works" by Chiparus, Philippe and Godard. (Compl. ¶ 11.) The plaintiff further alleges that he was told that the defendants were offering him a "significant discount" on the Statues, purportedly because the owners of the shop were planning to retire soon. (Compl. ¶ 13.) The plaintiff argues that he relied on these false representations and purchased the Statues for $105,000. (Compl. ¶ 15.) He asserts that at the time these assertions were made, the defendants "knew the Statues were worth far less than the invoice price." (Compl. ¶ 21.) After the plaintiff had agreed to purchase and paid for the Statues, the defendant sent him appraisals for each statue, in which Mr. Shalom described the Statues as "genuine." (Compl. ¶ 26.) The plaintiff alleges that these descriptions were "deliberate fraudulent misrepresentations," and that "[n]ot withstanding the valuation of the Statues in the Elliot Stevens Appraisals of between $5,000 and $17,000 per Statue, none of the Statues is worth more than $500, such value being entirely

related to the materials from which each Statue is made." (Compl. ¶¶ 28–29.) The plaintiff alleges that as a result of his reliance on the defendants' representations, he incurred $105,000 plus £3615.24 in damages.

In opposition to the plaintiff's motion, defendants argue that defendants "did not knowingly present any false, fraudulent or misleading information to Plaintiff concerning the statues." (Defs.' Opp'n Br. 9.) In their answer, the defendants deny that the plaintiff was told that the Statues were "genuine" and that the store was offering him a discount on the Statues due to the owner's plans to retire. (Answer ¶¶ 11, 13.) They also deny the plaintiff's allegation that the Statues are worth no more than $500 each. (Answer ¶ 29.)

Construing the facts in the light most favorable to the nonmoving party, there are material facts in dispute which makes judgment on the pleadings in the plaintiff's favor improper. Accordingly, the plaintiff's motion for a judgment on the pleadings on his fraud claims is denied.

## CONCLUSION

The defendants' motion for judgment on the pleadings with respect to the plaintiff's breach of contract and unjust enrichment claims is GRANTED. Both parties' motions for judgment on the pleadings with respect to the plaintiff's fraud claims are DENIED.

The parties shall appear at the Final Pre-Trial Conference on June 30, 2016, at 10:00 in Courtroom 219 at the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. The trial on the plaintiff's fraud claim will commence on Thursday, July 7, 2016.

The Clerk of the Court is respectfully directed to terminate the motions at ECF 71 and 74.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     New York, New York
           June 24, 2016